Alfrederick LOVE, Petitioner–
Appellant,

v.

L.E. SCRIBNER, Warden,
Respondent–Appellee.

No. 07–55237.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 2008.

Filed March 19, 2008.

As Amended on Denial of Rehearing and
Rehearing En Banc May 6, 2008.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Gerson Simon, for Petitioner–Appellant.

Alfrederick Love, pro se.

Charles C. Ragland, AGCA–Office of the California Attorney General San Diego, CA, for Respondent–Appellee.

Before: GRABER and BERZON, Circuit Judges, and WILKEN,* District Judge.

* The Honorable Claudia Wilken, United States District Judge for the Northern District of

**716**

MEMORANDUM **

Alfrederick Love appeals the district court's denial of his petition for writ of habeas corpus, arguing that the trial court erred when it overruled his objection to the prosecution's use of a peremptory challenge to remove the only available African–American member of the jury pool.

1. Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a challenge to a peremptory strike is evaluated in three steps. First, the defendant must make a prima facie showing that the prosecutor exercised the peremptory challenge because of race. *Id.* at 96–97, 106 S.Ct. 1712. Second, if the defendant makes such a showing, the burden shifts to the prosecutor to come forward with a race-neutral explanation for the challenge. *Id.* at 97, 106 S.Ct. 1712. Third, the court must determine whether "the defendant has established purposeful discrimination." *Id.* at 98, 106 S.Ct. 1712.

■ Where the "prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (direct appeal); *see also, Stubbs v. Gomez*, 189 F.3d 1099, 1104 (9th Cir.1999), *cert. denied*, 531 U.S. 832, 121 S.Ct. 88, 148 L.Ed.2d 49 (2000) (applying *Hernandez* rule to § 2254 habeas case). In this case, the prosecutor explained that he excused the only available African–American member of the jury pool because she was a "social worker and eligibility worker" and his policy was that "teachers and social workers don't sit on the jury." Because the disputed juror was an eligibility worker, whom the prosecution also described as a social worker, this explanation is sufficient to satisfy the prosecutor's burden at the second *Batson* step.

2. The California Court of Appeal held with regard to the third *Batson* step that the "trial court's conclusion—that the prosecution's subjective race-neutral reasons for exercising the peremptory challenges were sincere—is supported by the record." The trial court had rejected Love's contention that the prosecution's race-neutral reasons were pretextual, noting that the prosecution used a peremptory challenge to strike the only other potential juror "whose occupation was connected to social work."

■ Under the Anti–Terrorism and Effective Death Penalty Act (AEDPA), habeas relief is available to Love under his *Batson* claim only if its denial by the state Court of Appeal,

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Love's petition satisfies this test. In *Miller–El v. Dretke*, the Supreme Court held, "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." 545 U.S. 231, 241, 125

California, sitting by designation.

.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

S.Ct. 2317, 162 L.Ed.2d 196 (2005). Here, the state court of appeal refused to conduct the required analysis, citing then-existing California law, and stating that "a comparative juror analysis on appeal is unreliable and inconsistent with the deference we accord to trial courts in this area." This refusal "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); *Kesser v. Cambra,* 465 F.3d 351, 360 (9th Cir.2006) (en banc) (holding that "the principles expounded in *Miller–El* were clearly established Supreme Court law for AEDPA purposes at least by the time of the last reasoned state court decision in *Miller–El,* handed down in 1992.").

In *Snyder v. Louisiana,* ––– U.S. –––, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), the Supreme Court reversed the petitioner's conviction, holding that the state trial court committed clear error in its ruling on a *Batson* objection. The Court noted that the "implausibility" of the prosecutor's explanation that he struck an African–American juror based on the juror's student-teaching obligations "is reinforced by the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appear to have been at least as serious as" those of the individual who was stricken. *Id.* at 1211. However, the Court "recognize[d] that a retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial." 128 S.Ct. at 1211.

The *Snyder* Court's cautions are not applicable to this case. Love attempted to raise the alleged similarities at trial by asking, "Did he indicate that he had removed all teachers and social workers?"

The trial court did not require the prosecutor to answer Love's question regarding the individuals connected with teaching who were left on the jury. Love tried to elicit the facts that would have allowed the trial court, the Court of Appeal and this court to evaluate the alleged similarities, but was not permitted to do so. We cannot fault him for the trial court's decision.

3. Even though it declined to conduct a comparative analysis, the Court of Appeal went on to state that the fact that three individuals connected with teaching [1] were left on the jury would not alter its analysis. Hypothesizing that the "decision to retain the three teaching-connected jurors may well have been motivated by countervailing factors in their background that ameliorated concerns about their potential antipathy," the California appellate court noted that each of the teaching-connected individuals still on the jury was "older," and that two of them were married to individuals "whose occupations ... perhaps suggest a more conservative outlook."

Such speculation does not comply with the requirement that a court considering a *Batson* challenge compare what the prosecution said in explanation of its peremptory challenges with what it actually did. "A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller–El,* 545 U.S. at 252, 125 S.Ct. 2317. Thus, even to the degree the California Court of Appeal conducted a comparative analysis in the alternative, that analysis as well was in

1. We note that these individuals were not all teachers. However, the prosecution appears to have defined the term "social worker" broadly to include eligibility workers. This calls for a broad interpretation of the term "teacher" to include instructional assistants and teacher's aides.

violation of clearly established Supreme Court law. *Kesser,* 465 F.3d at 360.

■ Because the California Court of Appeal "unreasonabl[y] appli[ed] . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), with respect to the comparative analysis, the inquiry into whether the prosecutor's reason for rejecting the black juror was pretextual must be determined *de novo* on federal habeas. *See Frantz v. Hazey,* 533 F.3d 724 (9th Cir.2008) (en banc).

The dissent maintains that we can determine on the current record that there was no pretext, because the prosecutor did strike all the social workers, although not all the teachers. This analysis repeats the error of the California Court of Appeal. The prosecutor's stated reason applied to both teachers and social workers. Once again, where, as here, the prosecutor's stated reason does not hold up, "[i]ts pretextual significance does not fade," *Miller–El,* 545 U.S. at 252, 125 S.Ct. 2317, because an appellate judge, looking at the record, can construct a different rationale, here an antipathy toward social workers but not teachers.

■ 4. The record, as it stands, does not provide an adequate basis for determining *de novo* whether the real reason the prosecutor struck Ms. M. was her race. As discussed above, the trial court did not allow Love to examine the prosecutor's actual reasons for keeping the teaching-connected individuals, while striking Ms. M. from the jury. Love attempted to elicit the facts necessary to conduct a comparative analysis by asking, "Did he indicate that he had removed all teachers and social workers?" Instead, the court stated, "[Y]ou have preserved your record . . . So let's go forward."

Under the circumstances, the appropriate remedy is a remand for an evidentiary hearing. *See Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (holding that an evidentiary hearing for the development of necessary facts not developed in the state courts is appropriate after AEDPA unless "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel"); *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (holding that an evidentiary hearing in federal court on habeas is appropriate if, among other things, the state court did not adequately develop the material facts or did not conduct sufficient fact-finding to "afford a full and fair hearing").

We therefore REVERSE and REMAND for an evidentiary hearing to determine whether the prosecution struck Ms. M. from the jury because of her race. If, on remand, the district court finds discrimination, the petition shall be granted. If, however, the district court finds no discrimination, the judgment denying the petition shall be reinstated.

GRABER, Circuit Judge, dissenting:

In this case we owe not only the usual high amount of AEDPA deference to a state court's findings, 28 U.S.C. § 2254(d)(2); *Rice v. Collins,* 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), but also an extra measure of deference for a *Batson*-related evaluation of credibility, *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Applying those standards of review, on de novo review (which I agree is required here) I would affirm the decision of the district court and, therefore, respectfully dissent.

Of the 20 jurors who were struck using peremptory challenges, 11 were struck by the prosecutor. Of those 11, one was black and 10 were not. *Three* of the 11, including the only black potential juror

who remained in the jury pool after potential jurors had been excused for hardship, were either "eligibility workers" or worked at a social security office. *No* juror on the final jury worked as an eligibility worker, social worker, or social security worker.

Accordingly, the prosecutor's relevant explanation—that he did not want social workers or eligibility workers to sit on the jury (presumably because of their expected work-related attitudes)—is fully borne out by a comparative juror analysis. The prosecutor's additional reference to teachers was beside the point, because the excused black juror was not a teacher. The fact that the prosecutor was inconsistent about teachers, *none* of whom was black, to me does not cast doubt on the prosecutor's explanation about social workers and eligibility workers, all of whom were struck.

In view of the fact that the comparative factors already exist in the record, and in view of the extreme likelihood that an evidentiary hearing will yield no further information about the prosecutor's state of mind some five years after jury selection in this brief trial occurred, I think that an evidentiary hearing is unwarranted under the standards established in *Baja v. Ducharme,* 187 F.3d 1075, 1077–78 (9th Cir. 1999) (citing *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). And in the circumstances I am unable to conclude that the state trial court made an unreasonable determination of the facts in light of the evidence, *Rice,* 546 U.S. at 338, 126 S.Ct. 969.