FILED

**NOT FOR PUBLICATION**

AUG 31 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

ALFREDERICK LOVE,

    Petitioner-Appellee-Cross-Appellant

v.

MATTHEW CATE, Secretary,

    Respondent-Appellant-Cross-Appellee

Nos.  10-55377
          10-55387

D.C. No. 06-cv-00640-WQH (RBB)

MEMORANDUM[*]

Appeals from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted April 28, 2011
San Francisco, California

Before: GRABER and BERZON, Circuit Judges, and WILKEN,[**] District Judge.

Following proceedings on remand from this panel's decision in Love v.

Scribner (Love I), 278 F. App'x 714 (9th Cir. 2008), the district court granted

Petitioner Alfrederick Love a conditional writ of habeas corpus. Respondent

---

    [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**] The Honorable Claudia Wilken, United States District Judge for the
Northern District of California, sitting by designation.

Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation (CDCR), appeals the district court's decision. Love cross-appeals several of the district court's procedural and evidentiary rulings. We have jurisdiction under 28 U.S.C. § 2253. We affirm the decision to grant Love a conditional writ of habeas corpus, and we dismiss his cross-appeal as moot.

Love alleged that, in his state trial for battery of two prison guards, a prosecutor exercised a peremptory strike based on race against the only black venire-member, in violation of Batson v. Kentucky, 476 U.S. 79 (1986). Under Batson, a challenge to a peremptory strike is evaluated in three steps. First, the defendant must make a prima facie showing that the prosecutor exercised the peremptory challenge because of race. Id. at 96-97. Second, if the defendant makes such a showing, the burden shifts to the prosecutor to come forward with a race-neutral explanation for the challenge. Id. at 97. Third, the court must determine whether "the defendant has established purposeful discrimination." Id. at 98.

In Love I, a majority of this panel reversed the district court's previous denial of Love's habeas corpus petition, concluding that the California Court of Appeal unreasonably applied clearly established federal law by refusing to conduct a comparative juror analysis and by speculating as to the reasons the prosecutor

may have had for not striking non-black venire-members.  See Miller-El v. Dretke, 545 U.S. 231, 241 (2005); Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006) (en banc).  The majority remanded for an evidentiary hearing because, although the existing state court record evinced an unreasonable application of clearly established federal law, it did not provide an adequate basis for showing that the prosecutor had any reason other than race for striking the venire-member.[1] Because Love and the Love I respondent met their respective burdens at Batson's first and second steps, the district court was directed to consider only the third step on remand.  See Love I, 278 F. App'x at 716.  The district court was instructed that if, following an evidentiary hearing, it found evidence of improper discrimination, "the petition shall be granted."  Id. at 718.  Because the district court's decision on remand required only a factual determination of whether the prosecutor

---

[1] In Cullen v. Pinholster, the Supreme Court concluded that "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review" and that "a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  131 S. Ct. 1388, 1400 (2011).  Love I is not contrary to Pinholster.  Pinholster provides that an evidentiary hearing under § 2254(e)(2) may be appropriate "where § 2254(d)(1) does not bar federal habeas relief."  Id. at 1401.  Here, Love I held that the state appellate court, based on the record before it, unreasonably applied federal law.  Thus, § 2254(d)(1) does not preclude federal habeas relief.  Further, the evidentiary hearing in this case was ordered to give the state the opportunity to show that striking the sole black venire-member was not based on race discrimination; it was not held, as in Pinholster, to determine whether the state court unreasonably applied federal law.  See 131 S. Ct. at 1399.

discriminated based on race, we afford it deference and review for clear error. Paulino v. Harrison, 542 F.3d 692, 698-99 (9th Cir. 2008).

The district court did not clearly err in finding that race motivated the prosecutor's peremptory strike against the only black venire-member. At the evidentiary hearing, the prosecutor stated that he excused the black venire-member solely because he thought she was a social worker, the same reason he gave the state trial court. The prosecutor opined that "teachers and social workers don't make good jurors" and indicated that he did not distinguish between the two professions. Nevertheless, the prosecutor did not dismiss non-black venire-members within this category, even though he excused the black individual he believed to be a social worker.[2] These circumstances support the finding that his stated reason for the challenged peremptory strike was pretext for race discrimination. See Miller-El, 545 U.S. at 241.

The district court's decision is also supported by the prosecutor's failure to question the black venire-member. The prosecutor explained that, if a venire-member were a teacher or social worker, he would inquire "more thoroughly or at

___

[2] The prosecutor excused a non-black venire-member with a Spanish sur-name who worked for the Social Security Administration (SSA). At the evidentiary hearing, however, the prosecutor testified that he did not consider SSA employees to be social workers. The record contains no evidence that, at the time he excused the SSA employee, the prosecutor believed him to be a social worker.

least more specifically on those issues of concern like could they be fair, how do they solve disputes and things like that." The prosecutor believed that the black venire-member was a social worker, but did not ask her any specific questions. Although the prosecutor did not have an "obligation to question all potential jurors, his failure to do so" -- especially contrary to his professed practice -- also suggests that his proffered reason was pretext for improper bias. See United States v. Esparza-Gonzalez, 422 F.3d 897, 905 (9th Cir. 2005); see also United States v. Collins, 551 F.3d 914, 922 (9th Cir. 2009) (concluding that the prosecutor's failure to "pursue further questioning before striking the only remaining African-American panel member" could support an inference of discrimination).

The district court performed the comparative juror analysis required by Love I and Miller-El, which further supports its finding of discrimination. It compared the excused black venire-member to Juror No. 10, a teacher; Juror No. 8, a teacher's aide; and Juror No. 4, an instructional aide. During the proceedings on remand, Respondent pointed out to the district court that these jurors had non-racial characteristics that distinguished them from the black venire-member. However, the prosecutor never stated to the state trial court that he relied on these characteristics, even though Batson required him to articulate his reasons. See Johnson v. California, 545 U.S. 162, 172 (2005) ("The Batson framework is

designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process."); Paulino, 542 F.3d at 699; see also Miller-El, 545 U.S. at 252 (stating that, when a Batson challenge is raised, "a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives"). Plainly, Respondent's reasoning was not the prosecutor's rationale, and the district court properly rejected it.

The district court did not erroneously conflate steps two and three of the Batson analysis. It is true that the district court cited authority addressing the effect of a prosecutor's failure to articulate the basis for striking a potential juror. As explained above, a prosecutor's race-neutral reasons are the focus of Batson's second step. However, a prosecutor's failure to account for a strike "'is added to the inference of discrimination raised by the prima facie showing.'" Gonzalez v. Brown, 585 F.3d 1202, 1208 (9th Cir. 2009) (quoting Yee v. Duncan, 463 F.3d 893, 899 (9th Cir. 2006)). Thus, legal authority addressing Batson's second step can be relevant when evaluating a defendant's showing at step three. See, e.g., Gonzalez, 585 F.3d at 1208; Yee, 463 F.3d at 900.

On appeal here, Respondent argues that Love I was erroneous. Citing the subsequently decided cases Ali v. Hickman, 584 F.3d 1174 (9th Cir. 2009), cert. denied, 130 S. Ct. 2065 (2010), and Cook v. LaMarque, 593 F.3d 810 (9th Cir.

2010), he challenges the conclusion that the failure to conduct a comparative juror analysis constitutes an unreasonable application of clearly established federal law that vitiates the deference to state courts required under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Respondent did not raise this issue in the district court, including when the district court sought supplemental briefing in light of Ali in July 2009. Because Respondent failed to raise this argument below, we need not consider it. See Scott v. Ross, 140 F.3d 1275, 1283 (9th Cir. 1998).

Even if we were to agree with Respondent and now apply AEDPA deference, we would conclude that the California Court of Appeal made an unreasonable determination of the facts in light of the evidence before it. See 28 U.S.C. § 2254(d)(2). The state appellate court concluded that substantial evidence supported the state trial court's finding of no improper racial bias. However, in doing so, the state appellate court disregarded the prosecutor's assertion before the state trial court that "[t]eachers and social workers don't sit on the jury," a point he reiterated at the evidentiary hearing on remand, and his failure to excuse from the jury non-black teachers and educational aides, whom he regarded to be similar to teachers. By distinguishing teachers from social workers, notwithstanding the prosecutor's statements that he did not, and by giving no weight to the presence of

non-black educators on the jury, the state appellate court unreasonably determined that substantial evidence showed no discrimination.

The state trial court's determination that the strike was not racially motivated was likewise erroneous. First, the state trial court concluded that Love did not make out a prima facie case of race discrimination because only one peremptory strike was at issue; thus, the trial court explained, "there is no pattern," which it believed was required. This is incorrect because a single peremptory strike, motivated by discrimination, violates Batson. Gonzalez, 585 F.3d at 1206. Second, the state trial court accepted the black venire-member's disfavored type of employment as a "reasonable explanation." However, as already explained, the prosecutor did not strike non-black potential jurors with the disfavored types of employment. Thus, this explanation clearly lacked credibility. And when Love asked the trial court to explore whether or not the prosecutor dismissed all venire-members who were teachers or social workers, the trial court refused. Consequently, because its factual determination was also clearly erroneous, the state trial court's decision is likewise not entitled to deference. See Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam).

For the foregoing reasons, the district court did not clearly err in finding that the prosecutor exercised a peremptory strike on the basis of race.

**DECISION TO GRANT CONDITIONAL WRIT OF HABEAS CORPUS AFFIRMED. APPELLEE'S CROSS-APPEAL DISMISSED AS MOOT.**

<u>Love v. Cate</u>, Nos. 10-55377, 10-55387

GRABER, Circuit Judge, dissenting:

This case returns to us in a peculiar posture: We are asked to decide whether the district court's factual findings are clearly erroneous, when in my view no remand should have occurred and no such findings should have been made. Reasonable minds can (and do) differ about the appropriate inferences to be drawn from the record, both state and now federal. If we properly were reviewing what the <u>district court</u> found as fact, I would agree that the district court did not clearly err, our deferential standard of review.

But I adhere to the view, previously expressed, that no remand was appropriate in the first place. We owe great deference in the first instance to the <u>state court's</u> findings of fact. The California Court of Appeal did not make an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(d)(2). That court reasoned that counsel excused the juror in question for the stated reason that she was a social worker or eligibility worker, who might therefore be expected to be pro-defense, and that counsel applied that <u>specific</u> criterion consistently. The state court also found that counsel's stated reason was subjectively genuine. Neither that reasoning nor that result unreasonably found facts.

Supreme Court precedent since we decided <u>Love I</u> only underscores the

error of our ways.  In <u>Felkner v. Jackson</u>, 131 S. Ct. 1305, 1307 (2011) (per curiam), the Supreme Court forcefully reversed a habeas grant from this court on a <u>Batson</u> issue.  In doing so, the Court emphasized that we owe special deference to the state court's determination on a question of credibility, such as the one that we have here.  <u>Id.</u>  The majority's citation of <u>Felkner</u> for its result turns that decision on its head.

I respectfully dissent.